KURT C. FAUX, ESQ.
Nevada Bar No. 003407
LELAND K. FAUX, ESQ.
Nevada Bar No. 012206
THE FAUX LAW GROUP
1540 W. Warm Springs Road, #100
Henderson, Nevada 89014
Telephone: (702) 458-5790
Facsimile: (702) 458-5794
Email: kfaux@fauxlaw.com
       lfaux@fauxlaw.com
*Attorneys for Great American Insurance Company*

# IN THE UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| GREAT AMERICAN INSURANCE COMPANY, an Ohio corporation,<br><br>Plaintiff,<br><br>vs.<br><br>JMR CONSTRUCTION CORP., a Nevada Corporation; RON RIVARD, an individual; JOANNE RIVARD, an individual; DOES I through X, inclusive; ROE CORPORATIONS I through X, inclusive;<br><br>Defendants. | Case No.: 2:15-cv-02226-JCM-NJK<br><br>**ORDER GRANTING PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER, AND PRELIMINARY INJUNCTION** |

Plaintiff Great American Insurance Company ("GAIC"), by and through its attorneys, moved for a temporary retraining order and preliminary injunction on an emergency basis (the "Motion"). This Court, having reviewed the motion, finds and orders as follows:

1. On or about July 5, 2007, GAIC issued Payment Bond No. CA2942706 (the "Payment Bond") as surety on behalf of JMR, as principal, in the amount of $6,450,786.00.

2. On or about December 23, 2014, GAIC issued Undertaking on Appeal ("Supersedeas Bond"), Bond No. CA 2942706 in the amount of $700,000.00 in the case entitled *HPS Mechanical, Inc. v. JMR Construction Corp., et al.,* case no.: CV-11-02600, in the United States District Court, Northern District of California, San Francisco Branch.

1

3. In consideration for the issuance of the Bonds and to induce GAIC to issue the Bonds, the Indemnitors, entered into the Indemnity Agreement wherein they each agreed, jointly and severally, as follows:

**INDEMNITY/EXONERATION**

SECOND:  The undersigned jointly, severally and/or collectively shall exonerate, indemnify, hold harmless and keep the Surety indemnified from and against any and all liability for losses, costs, and/or expenses of whatsoever kind or nature (including, but not limited to, interest, court costs, consultant or expert fees, and counsel fees) and from and against any and all such losses and/or expenses which the Surety may sustain and incur: (1) By reason of having executed or procured the execution of Bonds on behalf of any of the Undersigned, (2) By reason of the failure of the Undersigned to perform or comply with any of the covenants and conditions of this Agreement or (3) In enforcing any of the terms, covenants or conditions of this Agreement.. . .

GENERAL PROVISIONS

A)  The Undersigned will pay to the Surety in such manner as may be agreed upon all premiums and charges of the Surety for the Bonds in accordance with its rate filings, its manual of rates, or as otherwise agreed upon, until the Undersigned shall serve evidence satisfactory to the Surety of its discharge or release from the Bonds and all liability by reason thereof.

4. The Indemnitors further agreed to provide collateral security upon GAIC's demand:

SECOND:  . . . Payment by reason of the aforesaid causes shall be made to the Surety by the Undersigned, upon demand by the Surety, as soon as liability exists or is asserted against the Surety, whether or not the Surety shall have made any payment therefor.  The amount of such payment to the Surety by the Undersigned shall be determined by the Surety and the Surety's demand for payment hereunder may at the Surety's option be in addition to and not in lieu of or substitution for any other collateral that may have been previously deposited with Surety by or on behalf of the Undersigned.  The Surety shall have the right to use the payment, or any part thereof, in payment or settlement of any liability, loss or expense for which the Undersigned would be obligated to indemnify the  Surety under the terms of this Agreement. The Surety shall have no obligation to invest or to provide a return on the payment or any other collateral deposited with the Surety.  The Undersigned shall be entitled to the refund of any unused portion of the payment upon termination of the liability of the Surety on all Bonds and the performance by the Undersigned of all obligations to the Surety under the terms of this Agreement.  The Surety's demand shall be sufficient if sent by registered or certified mail, by facsimile transmission, or by personal service to the Undersigned at the addresses stated herein, or at the addresses of the Undersigned last known to the Surety, regardless of whether such demand is actually received.  The Undersigned acknowledge that the failure of the

2

Undersigned to deposit with the Surety, immediately upon demand, the sum demanded by the Surety as payment shall cause irreparable harm to the Surety for which the Surety has no adequate remedy at law. The Undersigned agree that the Surety shall be entitled to injunctive relief for specific performance of any or all of the obligations of the Undersigned under this Agreement including the obligation to pay to the Surety the sum demanded and hereby waive any claims or defenses to the contrary.. . .

5. The Indemnitors also agreed to provide documentation and information to GAIC:

**BOOKS AND RECORDS**

TENTH: At any time, and until such time as the liability of the surety under any and all said Bonds is terminated, the Surety shall have the right to examine and copy the books, records and accounts of the Undersigned; and any bank depository, materialman, supply house, or other person, firm or corporation when requested by the Surety is hereby authorized and directed by the Undersigned to furnish the Surety with any information requested including, but not limited to, the status of the work under contracts being performed by the Undersigned, the condition of the performance of such contracts and payments of accounts.

6. Claims have been asserted by various claimants against the Bonds. These claims including the following:

| Claimant | Bond Nos. | Claimed Amount |
|---|---|---|
| Choice Construction, Inc. | CA2942706 | $ 127,300.00 |
| Supersedeas Bond | 3073104 | $ 700,000.00 |
| **TOTAL** | | **$827,300.00** |

7. In addition, GAIC has incurred the following losses:

| Description | Amount |
|---|---|
| Attorney's fees/expenses to date | $51,645.00 |
| Supersedeas bond premium x2 | $23,500.00 |
| **TOTAL** | **$75,145.00** |

8. GAIC anticipates and estimates it will incur additional expenses for future attorney's fees and expenses in the amount of $100,000.00.

9. In December 2014, Indemnitors agreed to grant deeds of trust to GAIC in real properties located at (a) 109 Black Gold Lane, Folsom, California ("Black Gold Lane Property");

3

1   and (b) a lot located at Lake of the Woods, Minnesota. Indemnitors have failed and continue to fail
2   to perform this agreement to provide deeds of trust notwithstanding numerous requests from GAIC.
3   As a result, GAIC remains unsecured and uncollateralized despite the promises of the Indemnity
4   Agreement. Even were these deeds of trust provided at this time, upon information and belief, there
5   is insufficient equity in the real properties to fully collateralize GAIC's exposure to liability.

6       10.    On October 13, 2015, GAIC formally demanded that the Indemnitors exonerate and
7   indemnitfy GAIC, and that they provide collateral security in the amount of $1,002,445.00. The
8   Indemnitors have failed to exonerate and indemnify GAIC and to provide the demanded collateral.

9       11.    GAIC has made multiple demands for the books, records and accounts of the
10  Indemnitors. The Indemnitors have failed to provide the demanded information.

11      12.    To date, the Indemnitors have failed to exonerate and indemnify GAIC, to provide the
12  collateral security as demanded by GAIC, and have failed to produce the books, records and
13  accounts as demanded by GAIC, despite repeated requests.

14      13.    GAIC is concerned that the Indemnitors may transfer, dissipate or secret assets. For
15  example, the Indemnitors have failed to comply with their agreement to provide GAIC with deeds
16  of trust as collateral while simultaneously transferring or attempting to transfer Indemnitors' same
17  real property for which they agreed to grant GAIC a deed of trust.

18      14.    Rather than grant deeds of trust, Indemnitors appear instead to be attempting to sell or
19  transfer their interests in real property. For example, the Black Gold Lane Property is currently being
20  advertised for sale. Should this sale proceed, GAIC's rights under the Indemnity Agreement will be
21  forever lost regarding the collateral protection this real property can provide. Such conduct is a clear
22  breach of GAIC's rights to collateral security based on the doctrines of exoneration, quia timet, and
23  GAIC's entitlement to specific performance of the collateral security provision of the Indemnity
    Agreement.

24      15.    Based on the foregoing, good cause exists to enter the following injunctive relief:

25  IT IS HEREBY ORDERED that the Indemnitors and all persons in active concert or
26  participation with the Indemnitors are prohibited, enjoined, and restrained from selling, transferring,
27  disposing of, encumbering or liening the real property known as the Black Gold Lane Property,
28  which property is currently listed for sale.

THE FAUX LAW GROUP
1540 W. WARM SPRINGS ROAD, SUITE 100
HENDERSON, NEVADA 89014
TEL. (702) 458-5790

IT IS FURTHER ORDERED that the Indemnitors must provide GAIC immediate access to the books, records, and/or accounts of the Indemnitors, including books, records, and/or accounts for any bank depository, materialman, supply house, or other person, firm or corporation, for these entities and individuals (the "Records").

IT IS FURTHER ORDERED that the Indemnitors must immediately post collateral security in the amount of $1,002,445.00 in cash by virtue of an executed Agreement of Indemnity (the "Indemnity Agreement") and by virtue of the equitable doctrines of specific performance, exoneration, and *quia timet* to GAIC.

IT IS FUTHER ORDERED that the Indemnitors and all persons in active concert or participation with the Indemnitors are prohibited, enjoined, and restrained from selling, transferring, disposing of, pledging or liening the Indemnitors' assets, personal property and real property until the requested collateral is posted by the Indemnitors.

IT IS FURTHER ORDERED that, pursuant to Fed.R.Civ.P. 65(c), GCNA shall post security in the amount of $5000.00 to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained.

**Preliminary injunction hearing scheduled for December 9, 2015 at 11:00 a.m. Opposition to be filed by December 1, 2015. Response to be filed by December 4, 2015.**

DATED November 25, 2015, at 2:20 p.m.

_____
UNITED STATES DISTRICT JUDGE

Submitted by:

THE FAUX LAW GROUP

/s/ Leland K. Faux _____
KURT C. FAUX, ESQ., Bar No. 003407
LELAND K. FAUX, ESQ., Bar No. 12206
1540 W. Warm Springs Road, #100
Henderson, Nevada  89014
*Attorneys for Great American Insurance Company*

5