UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| GREAT AMERICAN INSURANCE COMPANY,<br><br>　　　　　　　Plaintiff(s),<br><br>　　v.<br><br>JMR CONSTRUCTION CORP., et al.,<br><br>　　　　　　　Defendant(s). | Case No. 2:15-CV-2226 JCM (NJK)<br><br>ORDER |

Presently before the court is plaintiff Great American Insurance Company's ("GAIC") motion for a preliminary injunction and supplement thereto. (Doc. #5, 8). Defendants have not filed a response in opposition and the deadline to do so has passed.

**I.   Background**

During July 2007, plaintiff issued payment bond no. CA2942706 (the "payment bond") as a surety on behalf of defendant JMR Construction Corp. ("JMR"), as principal, in the amount of $6,450,786.00. The payment bond was issued to ensure "payment to all persons having a direct relationship with the principal or a subcontractor of the principal for furnishing labor, material, or both" and in accordance with the Miller Act, 40 U.S.C. §§ 3131–34. (Doc. #5 Exh. 1).

In consideration for the issuance of the bonds and to induce plaintiff to issue the bonds, the JMR, Ron Rivard and Joanne Rivard (collectively the "defendants") as indemnitors entered into an indemnity agreement on February 5, 2007. In the agreement, defendants agreed to exonerate, hold harmless, defend, and indemnify plaintiff from any potential liability, loss, and expense. (Doc. #5 Exh. 3).

**James C. Mahan**
**U.S. District Judge**

GAIC and JMR are defendants in two actions involving the payment bond. While working as a subcontractor for JMR, Choice Construction, Inc. ("Choice") asserted a claim for $127,300.00 against the payment bond. (Doc. #5, 10). Choice initiated suit in the Eighth Judicial District Court and JMR removed the case to the United States District Court, District of Nevada. *Choice Construction, In. v. JMR Construction Corp.*, Case No. 2:12-cv-00192-MMD-PAL (D. Nev.). That case is still pending resolution.

GAIC and JMR were also joint defendants in *HPS Mechanical, Inc. v. JMR Construction Corp. et al.*, Case No. 11-cv-02600 (N. D. Cal). (Doc. #5). On October 11, 2014, the court entered findings of fact and conclusions of law holding GAIC and JMR jointly and severally liable to HPS Mechanical in the amount of $120,094.32 and GAIC severally liable for $11,859. (Doc. #5). On December 9, 2014, the court awarded HPS its attorney's fees in the amount of $454, 525.00 and costs. On or about December 23, 2014, GAIC issued Undertaking on Appeal Bond No. CA 2892706 for $700,000.00 so that JMR could appeal the above decisions without execution on the judgment. *Id.*

In December 2014, defendants agreed to grant deeds of trust to plaintiff in real properties located at 109 Black Gold Lane, Folsom, California ("Black Gold Lane property") and a lot located at Lake of the Woods, Minnesota ("Lake of the Woods" property). (Doc. #5). Plaintiff claims that defendants have failed to grant the deeds of trust and instead appears to be attempting to sell the Black Gold Lane property. (Doc. #5 Exh. 5–6).

On October 13, 2015, plaintiff formally demanded that defendants exonerate and indemnify plaintiff and provide collateral security in the amount of $1,002,445.00. (Doc. #5 Exh. 4). Defendants have failed to do so. (Doc. #5 Exh. 6).

Plaintiff seeks to enforce its equitable and legal rights under the indemnity agreement. Plaintiff requests specific performance of the defendants' promise to immediately post collateral security in the amount of $1,002,445.00, pursuant to the term of the indemnity agreement and as a matter of equity. (Doc. #5). Furthermore, plaintiff has made demands for the books, records, and accounts of the defendants, pursuant to the indemnity agreement. Defendants have failed to provide that information as well. *Id.*

On November 24, 2015, plaintiff requested a TRO and a preliminary injunction freezing the assets of the defendants, including the Black Gold Lane and Lake of the Woods properties, and precluding any transfer of the assets until collateral security is provided. *Id.* Plaintiff also requested a preliminary injunction providing it access to defendants' books, records, and accounts. *Id.* On November 25, 2015, this court granted plaintiff's motion for a TRO and set a hearing regarding the motion for preliminary injunction for December 9, 2015. The court also set briefing deadlines. Defendants' response was due on December 1, 2015, and plaintiff's reply on December 4, 2015. As of December 8, 2015, defendants have not responded to the motion for preliminary injunction. As defendants do not seem to have an interest in appearing before this court, the court finds no need to have a hearing and will rule based on plaintiff's complaint and moving papers.

**II.     Legal Standard**

It is well established that a plaintiff seeking a preliminary injunction or temporary restraining order must demonstrate each of the following: (1) a likelihood of success on the merits; (2) that he is likely to suffer irreparable harm in the absence of relief; (3) that the balance of equities tips in his favor; and (4) that an injunction is in the public interest. *Winter v. N.R.D.C.*, 555 U.S. 7, 20 (2008). The test is conjunctive, meaning the party seeking the injunction must satisfy each element.

Additionally, post-*Winter*, the Ninth Circuit has maintained its serious question and sliding scale test. *See Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127 (9th Cir. 2011). "Under this approach, the elements of the preliminary injunction test are balanced, so that a stronger showing of one element may offset a weaker showing of another." *Id.* at 1131. "Serious questions going to the merits and a balance of hardships that tips sharply towards the plaintiff can support issuance of a preliminary injunction, so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." *Id.* at 1135 (quotations omitted).

Additionally, pursuant to Local Rule 7-2, an opposing party must file points and authorities in response to a motion and failure to file a timely response constitutes the party's consent to the

**James C. Mahan**
**U.S. District Judge**

- 3 -

granting of the motion. *See* LR IB 7-2(d); *United States v. Warren*, 601 F.2d 471, 474 (9th Cir. 1979).

## III. Discussion

### a. Likelihood of success on the merits

Plaintiff's likelihood of success on the merits is high. Defendants agreed to fully indemnify plaintiff for the entire amount of loss on the bonds issued to defendants. "[T]he purpose of the GIA [is] to hold the surety harmless for all expenses consequential to the issuance of the bond." *Transamerica Premier Ins. Co. v. Nelson*, 110 Nev. 951, 956, 878 P.2d 314, 317 (1994). The *Transamerica* court described that "in the case of a surety sued on a bond, the surety generally has no culpability whatsoever, and the entirety of its obligation arises from its undertaking on behalf of the indemnitor and principal obligor. Therefore, the GIA entitles the surety to full recovery. . . ." *Id.*; *see also Insurance Co. of the West v. Gibson Tile Co., Inc.,* 122 Nev. 455, 134 P.3d 698 (Nev.2006) (surety has the right to pursue its indemnification claims under the plain terms of a general indemnity agreement).

The defendants have a contractual obligation to exonerate and indemnify plaintiff from loss and liability. As plaintiff noted, both the Nevada Supreme Court as well as the United States District Court, District of Nevada consistently enforce indemnity agreements. *See e.g., Travelers Cas. & Sur. Co. of Am. v. Williams Bro., Inc.,* No. 2:12-CV-0058-LDG-NJK, 2013 WL 5537191, at *1 (D. Nev. Oct. 4, 2013); *Transamerica Premier Ins. Co. v. Nelson,* 110 Nev. 951, 878 P.2d 314 (1994).

Plaintiff has submitted evidence demonstrating that, between the claims that have been asserted, the losses already incurred, and the attorney's fees and expenses, it has or will incur over $1,002,445.00 in net losses on the bonds issued to defendants. Section 2 of the indemnity agreement specifies that defendants have an obligation to exonerate and indemnify plaintiff for all losses joint and several and provides plaintiff with a broad security interest in the defendants' assets. Section 10 grants plaintiff access to defendants' books, records, and accounts. The court sees no error in the indemnity agreement and defendants provide no evidence to suggest otherwise. Consequently, plaintiff has shown a high likelihood of success on the merits.

**James C. Mahan**
**U.S. District Judge**

- 4 -

*b. Irreparable injury*

Concealing or dissipating assets can constitute irreparable harm. *Travelers* 2013 WL 5537191, at *1.1; *see In re Estate of Ferdinand Marcos, Human Rights Litig.*, 25 F.3d 1467, 1480 (9th Cir. 1994); *In re Focus Media Inc.*, 387 F.3d 1077, 1086 (9th Cir. 2004). Plaintiff's evidence, including defendants' failure to provide access to their records and attempt to sell the Black Gold Lane property, that defendants may be attempting to divert assets. Defendants' failure to rebut those activities supports a finding that plaintiff has no adequate remedy at law and would suffer irreparable harm if an injunction is not issued.

When an indemnitor fails to deposit collateral security promptly after the surety's demand, courts generally grant specific performance, reasoning that the surety has no other adequate remedy at law. *See e.g.*, *Safeco Ins. Co. of Am. v. Schwab*, 739 F.2d 431, 434 (9th Cir. 1984); *Hartford Fire Ins. Co. v. Universal Imp., LLC*, No. 3:08-CV-00271-LRH-RAM, 2009 WL 4042699, at *5 (D. Nev. Nov. 20, 2009). It is a vindication of the right to be collateralized while litigation is pending, not the ultimate settling of accounts, that is at issue in specific performance situations. *See e.g.*, Fireman's Fund Ins. Co. v. S.E.K. Construction Co. 436 F.2d 1345, 1349 (10th Cir. 1971); *see also Northwestern Nat. Ins. v. Alberts* 741 F.Supp. 424, 429–30 (S.D.N.Y.1990). This security arrangement is a critical aspect of an indemnity agreement, monetary damages for breach of those security obligations cannot make plaintiff whole. Without injunctive relief in the form of specific performance of the collateral security obligation in the indemnity agreement and freezing assets, plaintiffs may suffer from irreparable harm.

*c. Balance of hardships*

In the absence of evidence to the contrary, the danger that plaintiff will not be able to recover on its claims is greater than the harm the defendants will suffer from a freeze of their assets before trial. The temporary restraining order (doc # 10) enjoins, for relevant purposes, the indemnitor defendants, "and all persons in active concert or participation with the indemnitors. . . from selling, transferring, disposing of, pledging or liening the Indemnitors' assets, personal property, and real property until the requested collateral is posted by the Indemnitors."

**James C. Mahan**
**U.S. District Judge**

The court takes into account the concern that legitimate investment or business opportunities may be compromised if the defendants' assets are frozen. However, without opposition from defendants, the court views this preliminary injunction as the best option to maintain the "status quo." *But cf Aronoff v. Katleman,* 75 Nev. 424, 345 P.2d 221 (1959) (discussing when a plaintiff is essentially seeking an attachment that halts the company's operations and forbids it from continuing to function, rather than merely attempting to maintain the "status quo."). This injunction does not squarely prohibit defendant from conducting operations, but does require that he post collateral security before any assets are moved. While this may create hardship, defendants have brought that squarely upon themselves. Indeed, defendants clearly are not concerned about any hardship this may cause as they consent to the granting of this motion by failing to respond in accordance with local rule 7-2.

    d. *Public interest*

When an injunction will impact non-parties and has the potential to impact the public, the public interest is relevant. *See Stormans, Inc. v. Selecky,* 586 F.3d 1109, 1139 (9th Cir. 2009). However, "[w]hen the reach of an injunction is narrow, limited only to the parties, and has no impact on non-parties, the public interest will be "at most a neutral factor in the analysis rather than one that favor[s] in [granting or] denying the preliminary injunction." *Id.* at 1138–39 (quoting *Bernhardt v. L.A. Cnty.,* 339 F.3d 920, 931 (9th Cir. 2003)). There is a public interest in the enforcement of contracts and judgments. The public benefits from the predictability in commercial settings that is created by the enforcement of written contracts such as indemnity agreements. The court determines that, under the circumstances presented, the reach of the injunction is narrow and limited enough that the public interest is not implicated in a significant way.

**IV.**    **Conclusion**

Based on the foregoing, the balance of factors weigh in plaintiff's favor and the court finds good cause to order a preliminary injunction against the defendants.

Accordingly,

**James C. Mahan**
**U.S. District Judge**

- 6 -

1  IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that plaintiff's application
2  for preliminary injunction (doc. # 5) be, and the same hereby is, GRANTED.
3  IT IS FURTHER ORDERED that the plaintiff submit a proposed order for preliminary
4  injunction.
5  IT IS FURTHER ORDERED that the hearing regarding plaintiff's motion for a preliminary
6  injunction currently set for December 9, 2015, at 11:00 AM (doc. #10) be, and the same hereby is,
7  VACATED.
8  DATED December 8, 2015.

_____
UNITED STATES DISTRICT JUDGE

**James C. Mahan**
**U.S. District Judge**